UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 21-cv-80815 AMC

CITIZENS BANK, N.A.,

    Plaintiff,

vs.

JES GLOBAL CAPITAL II, L.P.; JES GLOBAL
CAPITAL GP II, LLC; and ELLIOT S. SMERLING,

    Defendants.
_____/

## MEMORANDUM OF LAW IN SUPPORT OF
## EMERGENCY MOTION TO APPOINT RECEIVER

Plaintiff Citizens Bank, N.A. ("Citizens"), by its undersigned counsel, files this Memorandum of Law in Support of its Emergency Motion to Appoint a Receiver pursuant to Federal Rule of Civil Procedure 66.

### INTRODUCTION

Citizens initiates this action and files this motion to appoint a receiver to preserve, control and manage the assets of Defendants Elliott S. Smerling ("Smerling"), JES Global Capital GP II, LLC ("JES GP II"), and JES Global Capital II, L.P. ("JES Fund II"), in order to protect Citizens, a victim of Defendants' brazen fraud, from any further harm arising from the likely risk of waste and dissipation of Defendants' assets. As set forth in greater detail in the Verified Complaint that accompanies this motion ("Compl."), along with the attached declaration of Joseph P. Sileo, attached hereto as Exhibit A, Defendants fraudulently induced Citizens to enter into a Loan

Agreement[1] involving a $60 million line of credit through falsehoods, forged and fictitious documents, and outright lies.

In connection with a nearly identical fraudulent scheme targeting a different bank, Smerling is now in prison facing federal criminal charges and cannot manage the financial affairs of JES GP II (of which Smerling is the sole member) or JES Fund II (of which JES GP II is the sole true partner), let alone Smerling's own financial affairs. Further, Smerling and his associates have every incentive and opportunity to divert, diminish, and hide proceeds of their fraud from Citizens. Indeed, the federal court overseeing the civil case against the other victim bank found that Smerling and certain of his associates were doing just that. Thus, Defendants' assets are in imminent danger of dissipation, causing further irreparable injury to Citizens. Citizens brings this motion to immediately appoint a receiver to locate, preserve and control Defendants' assets so that Citizens ultimately will be able to enforce its judgment on the merits. The requested relief is particularly warranted in view of the fact that the risk of fraudulent transfer of assets beyond the reach of this Court is heightened by Defendants' access to foreign bank accounts and foreign homes.

## STATEMENT OF FACTS

**I.    Defendants' Fraudulent Scheme.**

Smerling initiated contact with Citizens by representing that he was the principal of multiple successful private equity funds, including JES Fund II, a fund with interests in multiple portfolio companies and capital commitments from prominent limited partners, including international preeminent financial institutions, an endowment for a prestigious university and numerous high net-worth individuals. Compl. ¶¶ 2, 15. Smerling sought a revolving line of credit

---

[1] All defined terms cited in this Motion have the same meaning as those defined in Citizens' Verified Complaint.

for JES Fund II in the amount of $60 million, falsely representing that JES Fund II's Limited Partners had committed $200 million in capital to JES Fund II, which would serve as collateral for the loan. *Id.*

In applying for a line of credit from Citizens, Defendants submitted numerous false and fictitious documents and provided other fabricated information, which included:

(a) Representations that JES Fund II had numerous Limited Partners – including multiple prominent international financial institutions, the endowment of a prestigious university and several high net-worth individuals – with capital commitments totaling approximately $200 million, *id.* ¶¶ 2, 19;

(b) A fictitious Limited Partnership Agreement, along with individual Subscription Agreements for each Limited Partner, evidencing purported capital commitments, at least six of which were also false with forged signatures, *id.* ¶¶ 19-20;

(c) A purported capital call history, reflecting the history of capital call contributions from some or all Limited Partners, *id.* ¶ 21;

(d) Purported financial statements for JES Fund II, which Defendants falsely represented had been audited by Accounting Firm A, *id.* ¶ 23; and

(e) A forged audit opinion letter from Accounting Firm A, *id.* ¶ 28;

(f) Representations that JES Fund II's Limited Partners had agreed to an amendment to its Limited Partnership Agreement, including a purported amendment to the Limited Partnership Agreement with forged signatures, *id.* ¶ 24.

In reliance on these and other representations, Citizens entered into a Loan Agreement with JES Fund II and JES Fund GP II, effective November 22, 2019. *Id.* ¶ 26. Following the execution of the Loan Agreement, Defendants continued to make misrepresentations to support extensions of credit under the Loan Agreement, an extension of the Loan Agreement (which had an initial one-year term) and to conceal their fraud. These misrepresentations included providing additional fictitious financial statements, which contained another false audit letter from Accounting Firm A and purported partnership balance sheets and capital contributions on "Orangefield-Columbus" letterhead – which were, again, fictitious. *Id.* ¶ 28. In addition, when Defendants wired

approximately $5 million to Citizens, in order to purportedly satisfy an obligation under the Loan Agreement, Defendants falsely represented that the transfers were capital call contributions from Limited Partners of JES Fund II; in fact, the transfers were made solely by Defendants with funds from a Smerling-controlled account at another financial institution. *Id.* ¶ 29. In reliance on these pervasive misrepresentations, Citizens made a total of approximately $60 million in extensions of credit pursuant to the Loan Agreement, approximately $54 million of which remains outstanding. *Id.* ¶ 2.

## II. <u>Criminal and Civil Proceedings Against Smerling.</u>

On February 26, 2021, Smerling was arrested by FBI agents in Florida and charged with wire fraud and aggravated identity theft in connection with a loan he obtained from SVB. *Id.* ¶ 40; *see also* Compl., *United States v. Smerling*, 21-MJ-2223 (S.D.N.Y..), removal and bond hearings in *United States v. Smerling*, 21-MJ-8068 (S.D.Fla.), ECF No. 1 ("Criminal Complaint" or "Criminal Case"). According to the Criminal Complaint, Smerling obtained a loan for another private equity fund he purported to manage, which upon information and belief is JES Fund III, for approximately $95 million. Compl. ¶ 3. The Criminal Complaint further alleges that Smerling falsely represented that he had secured investments from limited partners and presented false financial statements to SVB purportedly audited by Accounting Firm A, much like he did to Citizens. *Id.* ¶ 41. The Chief Investment Officer of an endowment fund of a prominent New York university Smerling held out as a limited partner of JES Fund III confirmed to the FBI that the fund was not a limited partner. *Id.* ¶ 42. Similarly, representatives of an investment manager Smerling represented to be a limited partner of JES Fund III told the FBI that the signature on the purported subscription agreement was highly unlikely to be legitimate and that the investment manager had found no indication that it had ever wired any money to JES Fund III. *Id.* ¶ 43.

On March 3, 2021, following a detention hearing in this Court in which Smerling consented to travel to the Southern District of New York for trial, Magistrate Judge William Matthewman remanded Smerling into custody without bond. *Id.* ¶ 44. The next day, Judge Matthewman issued a Pretrial Detention Order in which he found that Smerling is a flight risk. Compl. ¶ 45. Specifically, Judge Matthewman found that the "weight of the evidence against [Smerling] is very substantial," and that Smerling's conduct "involves a large-scale financial fraud" in which he "impersonat[ed] various officers of a university endowment fund and an investment fund and forg[ed] several documents." *Id.*; *see also* Criminal Case ECF No. 5.

On March 24, 2021, the same day the Pretrial Order was issued in Smerling's criminal case, SVB filed a civil complaint in the Southern District of New York against Smerling and JES GP III, *Silicon Valley Bank v. Smerling et al.*, 21-CV-2552 (JPC) ("SVB Complaint" or "SVB Civil Case"). Compl. ¶ 4; *see also* SVB Civil Case ECF No. 1. The SVB Complaint set forth additional details regarding Smerling's fraud on SVB, including (a) Smerling and JES GP III represented that JES GP III was a legitimate fund with approximately $500 million in capital contributions from limited partners (many of whom overlap with the purported Limited Partners of JES Fund II); and (b) Smerling and JES GP III presented SVB with fictitious and forged financial documents, which included a fictitious audit opinion letter purportedly signed by Accounting Firm A. Compl. ¶ 4.

On March 26, 2021, SVB filed an Ex Parte Motion for Expedited Discovery, an Ex Parte Motion for an Order of Attachment and Temporary Restraining Order, and supporting memoranda of law and declarations in its action against Smerling and JES GP III. SVB Civil Case ECF Nos. 13, 15, 16, 17. SVB sought expedited discovery and subpoenas related to Smerling and JES GP III, prejudgment attachment with respect to Smerling and JES GP III's assets and other property,

5

and a temporary restraining order pending a final decision on the order of attachment. *Id*. The court granted SVB's Proposed Order for Attachment and Temporary Restraining Order the same day. SVB Civil Case ECF No. 19. On March 29, 2021, SVB filed a Supplemental Memorandum in response to information provided to it by counsel representing ABN Law, PLLC, ("ABN") [Law Firm B], a Florida-based law firm that serves as registered agent for JES GP III. SVB Civil Case ECF Nos. 22, 23. Counsel for ABN informed SVB that associates of ABN act as managers of a limited liability corporation affiliated with Smerling and JES GP III and had documents and information about accounts controlled by Smerling or his affiliates. *Id.* The same day, the court entered SVB's Proposed Supplemental Order to Show Cause for an Order for Expedited Discovery and Temporary Restraining Order, finding that Canes Nineteen (defined below) and its managers "have been, or in the future may be, directed to transfer, withdraw or dissipate property, assets or other funds at the direction or on behalf of Elliot S. Smerling or an individual or entity affiliated with Elliot S. Smerling." SVB Civil Case ECF No. 26.

**III.     Citizens Discovery of Fraud and Subsequent Investigation.**

Following Smerling's arrest and detention, Citizens sent JES II a Default Notice, declaring that Smerling's detention and his fraudulent $5 million capital raise constituted "Events of Default" under the Loan Agreement. Compl. ¶¶ 48-49. Apart from terminating its commitments under the Loan Agreement, the JES II Default Notice, among other things, demanded that JES Fund II and JES GP II issue capital call notices to the Limited Partners in an amount sufficient to satisfy all amounts owed to Citizens. *Id.* ¶ 50. Citizens then called the Controller of JES Fund II to inquire about the delivery of such capital call notices and other matters pertaining to JES Fund II. *Id.* ¶ 51. The Controller told Citizens that only Smerling could execute documents such as capital call notices on behalf of JES Fund II, and that Citizens could only contact Smerling through

his criminal defense attorney pending trial. *Id.* The Controller also told Citizens that Smerling would be unable to manage the affairs of JES Fund II while detained on the federal criminal charges. *Id.*

Following Defendants' failure to comply with Citizens' demand to issue capital call notices, Citizens issued capital call notices to all of the Limited Partners, a right it exercised under the Loan Agreement. *Id.* ¶ 54. The only partners to respond to Citizens' requests denied that they ever executed a Subscription Agreement, became party to the Limited Partnership Agreement, or made any capital contributions or commitments to JES Fund II. *Id.* ¶ 55. Citizens subsequently filed the Verified Complaint that commenced this action.

## **ARGUMENT**

To prevent the imminent loss of Defendants' assets (including the approximately $54 million owed to Citizens) through waste, fraud or mismanagement, the appointment of a receiver is warranted in this case. This Court is empowered to appoint a receiver in any civil proceeding involving property pursuant to 28 U.S.C. §754 and Rule 66 of the Federal Rules of Civil Procedure. Receivership is a matter of federal law in diversity actions brought in this circuit. *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1292 (11th Cir. 1998).

While "no precise formula exists for determining when a court should resort to a receiver…federal courts may consider a variety of factors in determining whether a receiver is warranted, including: (1) the presence of a contractual receivership provision; (2) fraudulent conduct on the part of the defendant; (3) imminent danger that property will be lost or squandered; (4) the inadequacy of available legal remedies; (5) the probability that harm to the plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; (6) plaintiff's likelihood of success on the merits; and (7) whether the receivership will in fact

serve the plaintiff's interests." *Comerica Bank v. Everglades Dressage, LLC*, No. 20-CIV-81360-RAR, 2021 WL 911065, at *2 (S.D. Fla. Feb. 28, 2021).  In this case, evidence of Defendants' fraudulent conduct and breach of the Loan Agreement is clear and compelling and the other factors noted above all weigh  heavily in favor of the appointment of a receiver, including the imminent danger to Citizens that Defendants will almost certainly secrete, encumber, or dispose of  assets, and the need for control over and management of Defendants' financial affairs pending a judicial resolution of this action on the merits.

I.      **Defendants' Fraudulent Conduct And Citizens'  High Likelihood Of Success On The Merits.**

In seeking appointment of a receiver, fraudulent conduct on the part of defendants is a critical factor weighing in favor of appointment.  With respect to the factor of likelihood of success on the merits, movant need only demonstrate "at least some likelihood of prevailing on the merits." *See Jackson v. N'Genuity Enters. Co.*, 2011 WL 4628683, *32. (N.D. Ill. Oct 3, 2011). The evidence adduced to date amply satisfies that standard as to Plaintiff's fraud and breach of contract claims given Defendants' pervasive fraud in, among other things, submitting fraudulent financial documents, forging signatures of purported Limited Partners and impersonating officers of major institutions.

Specifically, and as set forth in the Verified Complaint, Defendants' fraud is nothing short of breathtaking. Defendants' falsehoods included submitting a fictitious Limited Partnership Agreement along with Subscription Agreements bearing forged signatures of purported Limited Partners, Compl. ¶¶ 20; fictitious financial statements, which included a forged audit opinion letter, *id.* ¶ 28; and a fictitious capital call history report reflecting purported capital call contributions from Limited Partners, *id.* ¶ 21. Citizens reasonably relied on these documents and representations in entering into the Loan Agreement and extending credit under the Loan Agreement. *Id.* ¶ 26.

8

Finally, Citizens has undeniably incurred damages. As a result of Defendants' fraudulent representations, Citizens wired Defendants nearly $60 million. To date, a principal balance of approximately $54 million remains, in addition to fees, charges, interest, and other amounts owed. *Id.* ¶¶ 2, 62. Citizens has suffered further damages in its investigation and remediation of Defendants' fraud.

Moreover, evidence from the scheme against SVB further supports Plaintiff's allegations of fraud. According to the SVB Complaint, Smerling and JES GEP III represented that JES GP III was a legitimate fund with approximately $500 million in capital contributions from partners, just as Smerling misrepresented the existence of Limited Partners and capital contributions in JES Fund II. *Id.* ¶ 4 . The SVB Complaint further alleges that Smerling provided SVB with fictitious financial statements purportedly audited by Accounting Firm A, just like the financial records and fictitious audit opinion letter Smerling provided to Citizens. *Id.* And according to an FBI investigation detailed in the Criminal Complaint, Accounting Firm A, the Firm that purportedly audited both JES Fund II and JES Fund III, has found no indication that Smerling is or was ever a client of the firm. *Id.* ¶ 41. Accounting Firm A also confirmed this to Citizens. *Id.* ¶ 23. Further, the FBI investigation revealed that at least two financial institutions that Smerling represented were limited partners of JES Fund III had no known connections to Smerling, just like Defendants' representations regarding the purported Limited Partners of JES Fund II. *Id.* ¶ ¶ 42-43. The Criminal Complaint was accompanied by a sworn affidavit from an FBI agent involved in the investigation of Smerling. Criminal Case ECF No. 1. And as Magistrate Judge Matthewman concluded in Smerling's Pretrial Detention Order, the "weight of the evidence against [Smerling] is very substantial." *Id.* ¶ 45, Criminal Case ECF No. 5.

9

With respect to Plaintiff's breach of contract claim, the evidence establishes multiple Events of Default under the Loan Agreement, as set forth more fully in the Verified Complaint. First, the Loan Agreement provides that any default in the payment of principal is an immediate Event of Default. Compl. ¶ 34. Defendants have continuously failed to pay all amounts owed under the Loan Agreement since the Default Notice. *Id.* ¶ 62. Second, the Loan Agreement provides that any representation or warranty that is untrue or inaccurate in any material respect made by Defendants gives rise to an Event of Default. *Id.* ¶ 35. Defendants made multiple material misrepresentations under the Loan Agreement, including that all of the Limited Partners and their respective Subscription Agreements were accurately represented; that neither JES Fund II nor JES GP II knew of any circumstances that would inhibit the purported Limited Partners' obligations to make capital contributions pursuant to a capital call (such as, for example, the absence of any such obligation given the inauthentic Subscription Agreements); that the Defendants fairly presented JES Fund II's financial condition; and that all information provided by Defendants in connection with the Loan Agreement was accurate. *Id.* ¶ 32. Third, failure to provide audited financial statements is an Event of Default under the Loan Agreement. *Id.* ¶ 36. The audited financial statements Defendants provided were fictitious – including misrepresentations regarding the Limited Partners' purported capital commitments and contributions to date, along with the forged audit opinion letter from Accounting Firm A – and thus violated this provision. *Id.* ¶ 23. Finally, the Loan Agreement provides that the occurrence and continuation of a "Key Person Event," which includes Smerling's failure to be employed by or devote a significant portion of his working time and attention to JES Fund II and JES GP II, is an Event of Default under the Loan Agreement. Smerling's failure to be employed by or devote a significant portion of his working time and attention to JES Fund II and JES GP II violates this covenant. *Id.* ¶ 38. Smerling is currently

detained pending trial and cannot devote any time to the management of either entity. *Id.* ¶ 45; ¶¶ 51-52. The evidence presented therefore establishes that Citizens is highly likely to prevail on both its fraud and breach of contract claims.

II. **Defendants' Assets Are In Imminent Danger Of Being Lost Or Squandered, Which Would Cause Irreparable Harm to Citizens.**

A receivership is necessary in this case to prevent the destruction or diminution of Defendants' assets. *See Hawes v. Madison Ave. Media, Inc.*, No. 11-CV-81025, 2012 WL 12861096, at *2 (S.D. Fla. June 26, 2012) ("A receiver may be appointed to avert further loss of assets through waste and mismanagement."). Defendants' assets – including but not limited to, tens of millions of dollars received from Citizens under the Loan Agreement pursuant to Defendants' fraudulent scheme – are at risk of being lost because Defendant Smerling, the sole member of JES GP II and JES Fund II's general partner, is incarcerated and unable to operate JES GP II and JES Fund II. Compl. ¶ 45; ¶¶ 51-52. Similarly, Smerling is unable to manage his own financial affairs – or the affairs of the various apparent shell entities through which he operates. All of this would cause irreparable harm to Citizens, in that this would frustrate Citizens ability to enforce any final judgment in this case. Such imminent risk is reflected by events immediately following Smerling's court ordered detention based on a finding of substantial evidence in the Criminal Complaint. *Id.* ¶ 45. Specifically, upon learning of Smerling's arrest, Citizens promptly contacted the Controller of JES Fund II to inquire about its issuance of capital call notices following the delivery of default notices by Citizens. *Id.* ¶ 51. According to the Controller, only Smerling has the ability to execute documents, such as capital call notices, on behalf of JES Fund II and Smerling would be unable to act on behalf of JES Fund II while detained pending trial. *Id.* In response to an e-mail requesting access to JES Fund II's books and records pursuant to the Loan Agreement, the Controller stated "I am not authorized to do anything." *Id.* Citizens' attempt to

contact Smerling's defense attorney to seek assistance to exercise its rights to inspect books and records under the Loan Agreement proved unfruitful. *Id.* ¶ 52. Given that Smerling is the only individual who can control, manage, oversee and control the assets of JES GP II and JES Fund II, neither entity is currently under active management. This lack of management over a potentially extended period presents a clear risk to the assets of JES GP II and JES Fund II, including a high probability of loss or, at the very least, a reduction in the value of these assets.

Moreover, there is a substantial risk that Smerling, or those working at his direction, will hide or dissipate assets. To date, Citizens has been unable to confirm that the proceeds from credit extensions under the Loan Agreement were legitimately invested by Defendants. *Id.* ¶ 56. To the contrary, there is substantial evidence that at least one of JES Fund II's purported portfolio companies – Nextlife Recycling – was not doing business by the end of 2014,[2] although JES Fund II's investment in that company supposedly occurred in September of 2018. Sileo Decl. ¶ 18. At this point, it is not clear if any of Citizens' proceeds were legitimately invested. When Citizens asked JES Fund II's Controller – who Smerling held out has part of the management team – "Do you have any contact information for any of the JES II portfolio companies?" the Controller responded, "I have no knowledge of what you ask." Compl. ¶ 51. To disguise the misuse of proceeds obtained by fraud, and in order to frustrate attempts by creditors to locate, attach, or otherwise levy against real property and/or other more liquid assets secured through proceeds of fraud, Defendants likely acquired property and other assets through nominees or other shell companies. SVB Civil Case ECF No. 26. Indeed, in the SVB case, the attorney of the purported

---

[2] As set forth in the Sileo Declaration ¶ 18, according to records of the Delaware Secretary of State, Nextlife Recycling's Delaware registration was canceled for failure to appoint a registered agent on or about January 15, 2014.Further, according to the records of the Florida Secretary of State, Nextlife Recycling's Florida Certificate of Authority was revoked on or about September 26, 2014. *Id.* In addition, according to records of the Kentucky Secretary of State, Nextlife Recycling's Kentucky Certificate of Authority was revoked on or about September 30, 2014. *Id.*

CFO of JES Fund II produced a list of bank accounts ("Bank Account List") that reflects approximately 55 bank accounts at five different financial institutions associated with Smerling. SVB Civil Case ECF No. 29, Ex. A (attaching Bank Account List). The accounts are in the names of approximately 26 different entities, including: Canes One LLC, Canes Two LLC and other sequentially numbered entities up through Canes Thirty, LLC. *Id.* In seeking expedited discovery into the claims in the SVB Complaint, counsel for SVB informed the Court that an unidentified Florida-based law firm informed SVB's counsel that Canes Nineteen, LLC ("Canes Nineteen") manages numerous Smerling-related companies through three individual members of Canes Nineteen – Rich Annunziata, Adam Bleggi and Martin Nestares – all of whom are associated with ABN Law PLLC ("ABN Law"). SVB Civil Case ECF No. 23. According to SVB's counsel, SVB's counsel was informed that Canes Nineteen owns or controls assets, property or other funds belonging to Smerling. *Id.* Further, SVB's counsel was informed that Smerling is preparing to transfer or withdraw substantial funds from certain accounts that he controls, including at least three accounts held in Switzerland. *Id.*. Based on this information, in an order dated March 29, 2021, the Court granted SVB a temporary restraining order and pre-judgment attachment order, finding that Canes Nineteen, Annunziata, Bleggi and Nestares, "have been, or in the future may be, directed to transfer, withdraw or dissipate property, assets or other funds at the direction or on behalf of Elliot S. Smerling or an individual or entity affiliated with Elliot S. Smerling." SVB Civil Case ECF No. 26 . Such diversions and concealments of loan amounts are likely to continue unabated absent the prompt appointment of a receiver.

     In sum, Defendants' assets are at risk of dissipation due to the absence of management of JES GP II and JES Fund II and Defendants' incentive to conceal or dissipate the proceeds of their fraudulent actions – an incentive the SVB court found Smerling was likely to act on. This would

cause irreparable harm to Citizens. Defendants have uncovered evidence indicating that Smerling and/or his associates are currently engaged in the process of fraudulently transferring and secreting assets to frustrate any ultimate judgment on the merits. A receiver should be appointed to identify, secure and protect these assets.

**III.     The Loan Agreement Expressly Contemplates Remedies Like Receivership.**

Under the Loan Agreement, JES GP II and JES Fund II agreed that "[i]f an Event of Default shall have occurred, then Lender may…without notice of default or demand, pursue and enforce any of Lender's rights and remedies under the Loan Documents, or otherwise provided under or pursuant to any Applicable Law or agreement." Compl. Ex. A § 10.2. The definition of "Applicable Law" is expansive and includes "all applicable provisions of … laws, . . ., rules, . . . interpretations and orders of courts or governmental authorities and all orders and decrees of all courts and arbitrators." *Id.* § 1.1. This includes seeking the appointment of a receiver under Fed. R. Civ. Proc. 66.

**IV.     Plaintiff's Interests Will Be Served By The Appointment of a Receiver And The Harm To Plaintiff By Denial Of The Appointment Would Greatly Outweigh Any Injury To Defendants.**

The appointment of a receiver will enable Plaintiff to ensure that assets remain available to satisfy an ultimate judgment in this case. A receiver would have access to books and records and have the ability to preserve the assets for the benefit of Citizens. *Bracco v. Lackner*, 462 F. Supp. 436, 455 (N.D. Cal. 1978) (holding that receivership "has been used to protect and preserve important rights of interested parties."). As detailed above, in the absence of assistance from Smerling, Citizens is unable to access the books and records of JES Fund II to which it is entitled under the Loan Agreement. Compl. ¶¶ 51-52. A receiver would be able to access such books and records and provide much needed information to Citizens and this Court.

In addition, a receiver would have the authority and ability to take steps to identify and preserve assets during the pendency of this action. *See Gordon v. Washington,* 295 U.S. 30, 37, 55 S. Ct. 584, 588, 79 L. Ed. 1282, 1287 (1935) ("Where a final decree involving the disposition of property is appropriately asked, the court in its discretion may appoint a receiver to preserve and protect the property pending its final disposition"). A receiver would fill the void left by the lack of management resulting from Smerling's detention, which would be beneficial to all parties, regardless of the outcome of the litigation. Moreover, a receiver would have the requisite tools to determine the location and ownership of relevant assets.

A receivership will impose little or no harm or burden to any non-movant, given the inability of Defendants to manage or operate their own affairs while Smerling is detained. Compl. ¶¶ 51-52. Indeed, to the contrary, the appointment of a receiver would greatly benefit any conceivable legitimate interest of Defendants. As detailed above, JES Fund II's own Controller acknowledged that only Smerling has the ability to execute documents such as capital call notices on behalf of JES Fund II and that Smerling is currently unable to act on behalf of JES Fund II given his detention pending trial. Compl. ¶ 51. Even if there were no fraud at issue here (and there is overwhelming evidence of fraud here), a receiver is necessary to preserve Defendants' assets given the management void. This would benefit both Smerling and his affiliated entities. Moreover, if JES GP II and JPS Fund II are allowed to continue without management, Citizens will be irreparably harmed.

### V. **Alternative Legal Remedies Are Inadequate.**

No legal remedies could make Citizens whole if Defendants' assets are lost or dissipated. As detailed above, if JES GP II and JES Fund II were to continue to operate without competent management, their assets are in serious danger of being dissipated or diminished in value. Such a scenario would render it difficult, if not impossible, for Citizens to satisfy an ultimate judgment

15

on the merits. Indeed, this Court has recognized that waste of corporate assets constitutes harm that legal remedies other than receivership are inadequate to remedy. *See Comerica*, 2021 WL 911065, at *3 (S.D. Fla. Feb. 28, 2021). Allowing JES GP II and JES Fund II to continue without management would not only result in corporate waste, but it would also frustrate Citizens' ability to secure a recovery of the approximately $54 million that was fraudulently obtained by Defendants. This would contravene equity, particularly given the strength of Citizens' claims.

## CONCLUSION

For the reasons set forth above, Citizens respectfully requests that a receiver be appointed with experience in the investigation of financial fraud, fraudulent transfer and dissipation of assets, and the management, discovery and preservation of assets, including assets that may have been held or fraudulently transferred outside the United States. Citizens recommends James Feltman with Kroll as a qualified candidate for a receiver, and has attached his resume as Exhibit B to its accompanying motion. Citizens requests that the Court not require a bond for the appointment of the receiver given Mr. Feltman's prior extensive experience serving as a receiver and the underlying circumstances of the clearly fraudulent conduct at issue here. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) (courts have wide discretion to set the amount of a bond, and even to dispense with the bond requirement); *see also Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999). For the reasons discussed above, this Court should grant Citizens' Emergency Motion to Appoint a Receiver and enter Citizens' Proposed Order Appointing a Receiver.

**Dated: May 5, 2021**                              Respectfully submitted,

By:   /s/ *Alexandra D. Blye*
Alexandra D. Blye
Florida Bar No.:  71499
E-mail: ablye@carltonfields.com
John R. Hart

Florida Bar No.: 612553
E-mail: jhart@carltonfields.com
Robert N. Gilbert
Florida Bar No.: 310662
E-mail: rgilbert@carltonfields.com
**CARLTON FIELDS, P.A.**
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, FL 33401
Telephone: (561) 659-7070
Facsimile: (561) 659-7368

and

Vincent J. Connelly
*(Pro Hac Vice* Application *Pending)*
E-mail: vconnelly@mayerbrown.com
J. Gregory Deis
*(Pro Hac Vice* Application *Pending)*
E-mail: gdeis@mayerbrown.com
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

and

Jean-Marie Atamian
*(Pro Hac Vice* Application *Pending)*
E-mail: jatamian@mayerbrown.com
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

*Attorneys for Plaintiff, Citizens Bank, N.A..*